UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO HERRERA, | Case No.: 17-cv-2392-GPC-NLS |
| Debtor-Appellant, | |
| v. | **ORDER AFFIRMING BANKRUPTCY COURT MEMORANDUM DECISION** |
| AGUEDA PONS, | |
| Appellee. | |

Before the Court is a bankruptcy appeal brought by Debtor-Appellant Pedro Herrera, proceeding pro se, against Appellee Agueda Pons. The Court reviews the November 13, 2017 "Memorandum Decision Regarding Bifurcated Issues of Community Property and Administrative Claim, Order Granting Deferred Abstention From Unresolved Issues in Adversary Proceeding" and the December 5, 2017 "Order Denying Defendant's Motion for Sanctions" issued by Bankruptcy Judge Margaret Mann of the Southern District of California. AX[1] 6, 28.

Pursuant to Civil Local Rule 7.1(d)(1) and Federal Rule of Bankruptcy Procedure 8019(b), the Court finds the matter suitable for adjudication without oral argument. For

---

[1] The Court refers to Appellant's Appendix in shorthand as "AX" and Appellees' Supplemental Appendix as "SAX."

the reasons stated below, the bankruptcy court's November 13, 2017 Memorandum Decision is **AFFIRMED**. The Court remands for further proceedings consistent with this order, including whether California Family Code Section 2640's right of reimbursement is relevant to this action. The Court concludes that it lacks jurisdiction to review the December 5, 2017 Sanctions Order.

## I. APPELLATE JURISDICTION AND STANDARD OF REVIEW

"When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *In re Rios*, No. 12-CV-01037-CAS, 2015 WL 1728307, *1 (C.D. Cal. Apr. 14, 2015). The district court has jurisdiction to hear this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1).

On appeal, the district court reviews the bankruptcy court's findings of fact for clear error and reviews its conclusions of law de novo. *In re Int'l Fibercom*, 503 F.3d 933, 940 (9th Cir. 2007). By well-settled rule, "factual findings are reviewable only for clear error—in other words, with a serious thumb on the scale for the bankruptcy court." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). Whether the bankruptcy court applied the correct legal standard is a legal issue which is reviewed de novo. *In re Karelin*, 109 B.R. 943, 946 (B.A.P. 9th Cir. 1990).

"A mixed question of law and fact occurs when the historical facts are established; the rule of law is undisputed, . . . and the issue is whether the facts satisfy the legal rule." *In re Bammer*, 131 F.3d 788, 792 (9th Cir. 1997) (citations omitted). The standard of review for a mixed question of law and fact depends on whether answering it entails primarily legal or factual work. *U.S. Bank*, 138 S.Ct. at 967. Where mixed questions

immerse courts in case-specific factual issues, appellate courts should review a decision with deference. *Id.*

## II.    BACKGROUND[2]

The instant appeal primarily reviews the order of bankruptcy Judge Margaret M. Mann resolving community property issues.  AX 7.  After extensive pretrial hearings, Judge Mann conducted a trial on October 3 and 4, 2017 on three bifurcated issues: (1) whether 9662 Deer Trail Place, San Diego, CA 92127 ("Deer Trail") was the community or separate property of Debtor Pedro Herrera ("Debtor" or "Herrera") and his ex-spouse Agueda Pons ("Pons") on the date of the petition; (2) whether a 2004 Lexus was community or separate property; and (3) whether Debtor owes Pons a priority claim under 11 USC § 507(a)(1).[3]  The instant appeal concerns solely the issue of whether Deer Trail should be categorized as separate or community property.

Pons and Debtor were married in 1987 and separated on February 12, 2014.  AX 9. They are parties to the Superior Court of California—County of San Diego, Family Law Division, Case No. D547548 ("Divorce Case") filed by Pons on February 24, 2014.  On March 6, 2015, the state court entered an order which contained a finding that Debtor was "emotionally abusive" to Pons based solely on Pons' testimony that Debtor had made "unreasonable threats" and had claimed an "invasion of her bedroom without her permission."  *Id.*  Debtor did not refute these claims because his attorney failed to file responses that Debtor had prepared.  The bankruptcy court observed that the state court had been frustrated by the "generalities" in these allegations and considered these findings in the context of a hypothetical.  *Id.* ("The judge stated, 'I do think *if* there were unreasonable threats, invasion of her bedroom without permission, that could be emotionally abusive.'").  Ultimately, the state court ordered Debtor to vacate Deer Trail,

---

[2] The facts are taken substantially from the Bankruptcy Court's Memorandum Decision.
[3] Appellant did not appeal the Lexus and priority issues.

where both parties had been residing as of January 1, 2015. *Id.* The state court entered a judgment of dissolution for status only on December 11, 2015, but had not yet divided the parties' assets when this case was filed. *Id.*

During most of their marriage Pons did not work outside the home and cared for their two children, now adults, who each had type 2 diabetes. AX 10. Debtor was the sole income earner. He has an electrical engineering degree and his career involved developing software for the U.S. Navy and other customers and through the community property business Metasoft, LLC. *Id.*

The parties bought and lived in a number of homes during their marriage. These include a property in Georgia ("Kaley Walk") titled in Debtor's name that was later sold for a loss, and a property purchased at 12032 Caneridge Road, San Diego, California ("Caneridge") titled to Debtor as his "sole and separate property." *Id.* To confirm the separate title nature on Caneridge, Pons executed two quitclaim deeds on February 26 and November 24, 1998. Debtor and Pons bought Deer Trail with a deed titled in Debtor's name as a "married man, as his sole and separate property" on February 10, 2003. *Id.* The down payment used to purchase Deer Trail came from Debtor encumbering Caneridge in a loan taken out only by him. At the time of purchase, Pons signed an "Interspousal Transfer Deed" transferring Deer Trail to Debtor as his sole and separate property. The parties lived in Deer Trail together until they separated.

At trial the court heard the testimony of Debtor, Pons, and their daughter Krystin Herrera,[4] and a man named Laurence Brunson. AX 11-12. The bankruptcy court did not find all witnesses to be equally credible, finding that the testimony was "highly emotional" and the family witnesses were "each biased by the strong emotions" they experienced. AX 12. The court found Krystin's testimony regarding her father's alleged mistreatment of his

---

[4] Like the Bankruptcy Court, the court will refer to Ms. Herrera by her first name to avoid confusion and does not intend any disrespect by doing so.

family to not be credible, citing specifically that she was young at the time of these events, that her diabetes affected her recall, and that she had limited personal knowledge about Debtor and Pons' financial arrangements. *Id.*

The bankruptcy court also found Pons' testimony to be less credible than Debtor's due to her lack of detail, admitted memory problems, exaggeration of the facts, and inability to provide specifics on instances of domestic violence that were claimed to have been commonplace. In comparison, the court found that Debtor's memory of events was corroborated by his recall of detail and contemporaneous records that were kept. AX 12.

## III.    Deer Trail Community Property Determination

The primary issue on appeal is whether Deer Trail is community property. The Court first turns to the threshold question of whether the *Rooker-Feldman* doctrine applies before undertaking an analysis of various presumptions in California Community Property law to determine whether Deer Trail is community or separate property.

### A.    *Rooker-Feldman* Doctrine

As a threshold matter Appellee Pons argues that this Court lacks subject matter jurisdiction to reverse, entertain, or consider this appeal based on the *Rooker-Feldman* doctrine. This doctrine provides that "federal district courts lack jurisdiction to exercise appellate review over final state court judgments." *Henrichs v. Valley View Development*, 474 F.3d 609, 613 (9th Cir. 2007).

"*Rooker–Feldman* becomes difficult—and, in practical reality, only comes into play as a contested issue—when a disappointed party seeks to take not a formal direct appeal, but rather its de facto equivalent, to a federal district court." *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). In an extensive analysis, Judge Fletcher concluded that:

> The "inextricably intertwined" analysis of *Feldman* applies to defeat federal district court subject matter jurisdiction only when a plaintiff's suit in federal district court is at least in part a forbidden de facto appeal of a state court judgment, and an issue in that federal suit is "inextricably intertwined" with

> an issue resolved by the state court judicial decision from which the
> forbidden de facto appeal is taken

*Id.* at 1165.  Here, Court finds that *Rooker-Feldman* is inapplicable for several reasons. First, plaintiff has not undertaken a "forbidden de facto appeal of a state court judgment." The December 5, 2014 Order entered into by Judge Gerald Jessop of the Family Court of the San Diego Superior Court addressed only whether a protective order was warranted— not whether the 9662 Deer Trail Place residency constituted community property.  The order does not adjudicate the issue of property rights, the issue of community property, and does not discuss transmutation or raise any of the legal issues before this Court including whether the legal title presumption is trumped by the community property presumption. Instead, Appellee cites an irrelevant finding from the family court's order:

> [P]ursuant to Family Code 2047(a) the court finds that it may issue a protective order as defined in Family Code section 6218.  The Court grants Mother's request for a protect[tive] order under Family Code section 6340(a) and the Court orders Father to vacate *the family residence* located at 9662 Deer Trail Place, San Diego, California 92127, on January 1, 2015 . . . commencing January 1, 2015, the Court orders that Mother shall have exclusive use and possession of *the family residence*."

SAX 60 ¶ 13.  The use of the phrasing "family residence" is not a conclusive final determination that the property constituted Community Property.  Accordingly, Herrera is not pursuing a de facto appeal of that decision.  Furthermore, even if the Court considered the instant action a forbidden de facto appeal, the issue resolved in that case—a protective order—are not "inextricably interwined" with the community property determinations in this instant case.  Accordingly, the Court concludes that both this Court and the bankruptcy court were not barred by the *Rooker-Feldman* doctrine from adjudicating a community property determination for the purposes of bankruptcy proceedings.  This decision is supported by the general policy consideration that "simultaneous state and federal litigation of overlapping, and even identical, issues is an important feature of our federal system." *Noel*, 341 F.3d at 1165.

17-cv-2392-GPC-NLS

**B.     Community Property Principles**

California is a community property state.  *In re Marriage of Valli*, 58 Cal. 4th 1396, 1408 (2014).  "From its inception of its statehood, California has retained the community property law that predated its admission to the Union and consistently has provided as a general rule that property acquired by spouses during marriage, including earnings, is community property."  *In re Marriage of Bonds*, 24 Cal. 4th 1, 12 (2000).  The general theory is that the "husband and wife form a sort of partnership, and that property acquired during the marriage by the labor or skill of either belongs to both."  *Valli*, 58 Cal. 4th at 1408 (citing Witkin, Summary of Cal. Law, Community Property, § 1, p. 529).

The characterization of the parties' property—as community property or separate property—determines the division of the property between the spouses.  *Id.* at 1400. Property that a spouse acquired before the marriage is that spouse's separate property.  Cal. Fam. Code § 770(a)(1).   Property that a spouse acquired during the marriage is presumptively community property unless the presumption is rebutted by showing that it is (1) traceable to a separate property source; (2) acquired by gift or bequest; or (3) earned or accumulated while the spouses are living separate and apart.  *Id.* (internal citations omitted).  A spouse's claim that property acquired during a marriage is separate property must be proven by a preponderance of the evidence.  *Id.* (citing *In re Marriage of Ettefagh*, 150 Cal. App. 4th 1578, 1591 (2007)).

**C.     Legal Title Presumption v. Community Property Presumption**

To begin, the Court must decide whether the record title presumption or community property presumption controls.  This question has recently been decided by both the California Supreme Court in *Valli* and Ninth Circuit Bankruptcy Appellate Panel in *In re Brace*, 566 B.R. 13 (B.A.P. 9th Cir. 2017).

California Evidence Code Section 662 provides that the "owner of legal title to property is presumed to be the owner of the full beneficial title.  This presumption may be

7

rebutted only by clear and convincing proof."  Meanwhile, California Family Code Section 760 provides that "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."  Further, California Family Code Section 802 codifies a "presumption that property acquired during marriage is community property."

The Court finds that the bankruptcy court property relied on *In re Marriage of Valli*, 58 Cal. 4th 1396, 1409 (2014), for the proposition that the community property presumption trumps the record title presumption.  In *Valli*, the California Supreme Court held that purchases made during the marriage are not exempt from the transmutation requirements for converting community property to separate property.  In doing so, the Court abrogated *In re Marriage of Brooks & Robinson*, 169 Cal. App. 4th 176, 190 (2008), which had held that taking title in the name of only one spouse removed the property from the general presumption of community property and made the property presumptively separate property, and *In re Summers*, 332 F.3d 1240, 1243 (9th Cir. 2003), holding that the community property presumption is rebutted when a married couple acquires property from a third party as joint tenants.

This conclusion is further supported by the Bankruptcy Panel's decision in *In re Brace*, 566 B.R. 13, 19 (B.A.P. 9th Cir. 2017) which concluded that "[a]lthough there may be instances where the record title presumption could apply to marital property . . . we hold that, as a general rule, California's community property presumption applies in disputes in bankruptcy involving the characterization of marital property."

Accordingly, the bankruptcy court did not err by finding that the community property presumption is no longer overcome by the record title presumption. This conclusion is a straightforward application of what one treatise has dubbed "Frankie Valli's rule"—that the California Supreme Court now insists on written expression of intent for interspousal transmutation. § 4:71. Frankie Valli's rule—California Supreme Court insists

on written expression of intent for interspousal transmutation, California Community Property Law § 4:71 (2017 ed.).

Here, Debtor holds record title to Deer Trail in his own name. Under *Valli* and *Brace*, the community property presumption controls over the record title presumption.[5] Accordingly, the Court must proceed to analyze whether the presumption of community property can be (1) overcome by a showing that the property was purchased by separate property or (2) a valid transmutation took place between Debtor and his wife such that the property was transmuted from community property into separate property.

## D. Source of Property Used to Purchase Deer Trail

Property that a spouse acquired before the marriage is that spouse's separate property. Cal. Fam. Code § 770(a)(1). Property that a spouse acquired during the marriage is community property unless it is (1) traceable to a separate property source; (2) acquired by gift or behest; or (3) earned or accumulated while the spouses are living separate and apart. *Valli*, 58 Cal. 4th at 1400. "[W]here there is no written indication of ownership interests between the spouses, the general presumption of community property may be overcome simply by tracing the source of the funds used to acquire the property to separate property." *In re Marriage of Lucas*, 27 Cal. 3d 808, 815 (1980). Property that a spouse purchases with separate property funds continues to be separate property. *Thomasset v. Thomasset*, 122 Cal. App. 2d 116, 123 (1953). Separate property does not change character simply because the owner is married, the property is used in the marital relationship, or the property changes form or identity. *In re Marriage of Bonvino*, 241 Cal. App. 4th 1411, 1423 (2015). Property that is separate at the time of acquisition remains separate, except

---

[5] Interspersed in his arguments on other issues is Debtor's argument that his 1992 agreement and 1998 acquisition of property should not be subjected to the foresight required to predict the change in the law that resulted from the 2014 *Valli* decision. *See* Dkt. No. 23 at 23 ("An agreement between couples should be deemed valid if it was considered valid by both parties at the time when it was engaged."). The Court recognizes the Debtor's frustration with the California Supreme Court's recent changes in the law, but has not been able to identify any case law holding that *Valli* would not apply under these facts.

for any increase in value as a result of community efforts or contributions. *Id.* Moreover, "virtually any credible evidence may be used to overcome the general community property presumption, including tracing to a separate property source." *Id.*

Loan proceeds acquired during marriage are presumed to be community property. *Bonvino*, 241 Cal. App. 4th at 1423. This presumption can be rebutted by showing the "lender intended to rely on the spouse's separate property alone." *Id.* Loan proceeds secured by separate property are also separate property, but the proceeds of a loan made on a spouse's personal credit are considered community property. *Id.* The general presumption prevails unless there is satisfactory evidence of the lender's intent. *In re Marriage of Grinius*, 166 Cal. App. 3d 1179, 1187 (1985).

Debtor attempts to rebut the community property presumption by showing that Deer Trail was purchased with his separate property. Deer Trail was purchased on February 26, 1998 with the proceeds of loans from (1) a purchase money loan taken in Debtor's name only encumbering title to Deer Trail and (2) a loan for a down payment taken out in Debtor's name only that was secured by an interest in the Caneridge property.

The bankruptcy court concluded that there was no testimony or evidence from the lender indicating what it had relied on in making each of the Deer Trail loans. AX 15. The bankruptcy court weighed Debtor's testimony that Wells Fargo had sought to obligate Pons as an obligor under the mortgage and that Wells Fargo had chosen to make the loan even after Pons had declined to add her name. Ultimately, the bankruptcy court held that this was purely circumstantial evidence that was offset by the undisputed fact that the parties' income was all community property and that income was meant to be included on the loan application. Debtor further testified that Pons did not sign any of the loan applications on properties titled in his name alone and Pons did not have any recollection of loan applications. Nonetheless, the Court concluded that these "scanty facts" did not support that the lender relied "solely" on separate property in making the Deer Trail loans.

Next, the bankruptcy court also rejected Debtor's contention that the Deer Trail down payment loan was a separate property loan because it was secured by Caneridge, which Debtor argued was his separate property. The bankruptcy court held that this would not have been sufficient to establish debtor's burden that the lender relied "solely" on separate property.

The bankruptcy court also held that Debtor had also failed to demonstrate Caneridge was his separate property. AX 16. Caneridge had been purchased by a $16,406.70 down payment, of which approximately $9,800 had been loaned to Debtor by his mother Clara Herrera, who would not accept repayment, making this a functional gift. Debtor did not identify a source for the remainder of the down payment, making it presumptively community property. The remainder of the Caneridge purchase price was paid from a loan taken out in Debtor's name alone—which the bankruptcy court concluded was not obtained solely based on Debtor's separate property because the evidence indicated the lender likely relied on Debtor's community property income in making the loan.

The Court concludes that the bankruptcy court correctively determined that both the Deer Trail and Caneridge loans were presumptively community property as Debtor did make an adequate showing that either lender intended to rely solely on Debtor's separate property in issuing the loans. *See In re Marriage of Grinius*, 166 Cal. App. 3d at 1187 ("Without satisfactory evidence of the lender's intent, the general presumption prevails.").

On appeal, Debtor argues *inter alia* that substantial evidence—including loan notes, deeds of trust, Quitclaim deeds, Interspousal transfer deeds, and summaries—was presented at trial to indicate that the mortgage lenders of Deer Trail intended to rely solely on Debtor's separate property interest in making the loans. Dkt. No. 23 at 17. Specifically, Debtor points to the fact that Wells Fargo originally sought to obligate Pons, who declined, and that Wells Fargo chose to make the loan regardless. The Court agrees with the bankruptcy court that this alone does not show an intent by the lender to rely *solely* on

17-cv-2392-GPC-NLS

Debtor's separate property, given that his income was community property and that other loan applications typically required the parties to list their income.[6]  Further, Debtor argues that the lender's escrow agent insisted that Pons sign the Interspousal Transfer Deed prior to the funding.  Similarly, this argument fails because this argument does not show that the lender did not intend to rely on Debtor's income—which was community property—as a principal basis for making the loan.  Other evidence presented by Debtor similarly does not show reliance solely on Debtor's separate property as they do not show the lender's *intent* at the time the loan was made, but rather post-foreclosure enforcement activities.  The fact that Pons was not pursued by the lender does not show the lender's intent to rely solely on Debtor's separate property. *See* AX 234 (foreclosure notice stating underlying debt was sole obligation of the individual); AX 235 (foreclosure notice referring only to Debtor's bankruptcy).  Debtor's citation to mortgage clauses similarly do not rebut the bankruptcy court's conclusion that his community property income was not considered by the lenders. *See* Dkt. No. 23 at 24-25.

Without evidence suggesting that each lender relied *solely* on any separate property, the Court cannot conclude that the bankruptcy court clearly erred in holding that Deer Trail was not traceable to Debtor's separate property. *See U.S. Bank*, 138 S. Ct. at 966 ("factual findings are reviewable only for clear error—in other words, with a serious thumb on the scale for the bankruptcy court.").  The Court turns to Debtor's final argument—that valid transmutations took place.

## E. Transmutation

A valid transmutation of property requires that a valid express declaration is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.  Cal. Fam. Code § 852(a).  Where a transmutation results in one spouse

---

[6] While the parties were not able to present other loan applications, the Debtor was able to provide the loan application for his Kaley Walk property which included income on the loan application.  AX at 15.

being advantaged over the other, there is a presumption of undue influence that must be rebutted in order for the court to find the transmutation to be valid. *In re Marriage of Fossum*, 192 Cal. App. 4th 336, 344 (2011). The weight of authority requires that the burden of rebutting the presumption of undue influence be by a preponderance of the evidence. *In re Marriage of Mathews*, 133 Cal. App. 4th 624, 631 (2005).

### 1. Express Declaration

To satisfy the express declaration requirement, a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed. *Valli*, 58 Cal. 4th at 1400. The bankruptcy court concluded that the Interspousal Deed signed by Pons on February 7, 2003 met the express declaration requirements of Section 852(a). The Court agrees. The Interspousal Deed signed on February 7, 2003 states:

> For a valuable consideration, receipt of which is hereby acknowledged, Agueda M. Herrera, spouse of grantee, herein grants to Pedro Herrera, a married man, as his sole and separate property [Deer Trail].

AX 18. This statement provides an express declaration that Herrera was to own the property as "separate property." Accordingly, the express declaration requirement is met and the Court proceeds to analyze whether (1) debtor was advantaged by this transmutation to trigger the presumption of undue influence and (2) whether debtor rebutted the presumption of undue influence.

### 2. Debtor's Advantage

A presumption of undue influence applies if one spouse obtains an advantage over the other through the transmutation. *In re Marriage of Burkle*, 139 Cal. App. 4th 712, 730 (2006). The presumption of undue influence is regularly applied in marital transactions in which one spouse has deeded property to the other. *Id* The advantage that develops must be an "unfair advantage," not merely an advantage. *Id.* "Generally, a spouse obtains an advantage if that spouse's position is improved, he or she obtains a favorable opportunity,

13

or otherwise gains, benefits, or profits." *In re Mathews*, 133 Cal. App. 4th 624, 629 (2005).

The bankruptcy court found that Pons had been disadvantaged by the transfer of her community property interest in Deer Trail because the property was purchased with community funds, of which she was deprived. In particular, the court observed that the Deer Trail loan payments had been made with payments traceable to earnings from Metasoft LLC, a community property business. AX 19. The court rejected Debtor's claim that he was actually the disadvantaged party because Deer Trail was a "high risk" investment for which he would be solely liable in the event of a default. *Id.* Finally, the court found that the parties had intended to shield Pons from liability and required Debtor to bear the risk of poor credit, though these efforts would have been ineffective under California community property law.

On appeal, Debtor maintains that he was the one disadvantaged, and consequently no presumption of undue influence should apply to this transaction. Dkt. No. 23 at 16. Debtor specifically contests the bankruptcy court's findings that (1) Deer Trail was not sold at a gain; (2) that community property income did not pay for the mortgages; and (3) that the mortgage lender did not pursue Pons for delinquent mortgage payments. The Court is not persuaded by these arguments. Whether or not Deer Trail was sold at a gain is irrelevant to the question of whether Debtor would have obtained the property as his separate property. Next, while Debtor argues that he only spent his separate property, he fails to take into account the basic principle that all income earned by him during the marriage was community property. Finally, whether the mortgage lender pursued delinquent mortgage payments from Pons is not relevant to the instant question of whether Debtor gained an advantage from the execution of the deeds.

The Court concludes that Pons was a disadvantaged party and Debtor was an advantaged party. Here, California case law makes clear that the deed of property from one spouse to another without adequate consideration is a quintessential unfair advantage.

*See Burkle*, 139 Cal. App. 4th at 729 ("The presumption of undue influence is regularly applied in marital transactions in which one spouse has deed property to the other . . . In such cases, it is evident one spouse has obtained an advantage—the deeded property—from the other."); *In re Mathews*, 133 Cal. App. 4th at 629 ("Husband received an advantage or benefit from Wife's execution of the quitclaim deed when the residence became his separate property."). The fact that the effect of the transmutation results in the Debtor holding Deer Trail as separate property is an advantage to Debtor against the disadvantaged Pons. Moreover, under the rule established in *Burkle*, Debtor's advantage is an "unfair advantage" because there was a lack of disclosure and a failure of adequate consideration received by Pons. *See Burkle*, 139 Cal. App. 4th at 732, 735 n.13 (describing clearly inadequate consideration for execution of a quitclaim deed as an "unfair" advantage). There is no evidence that Pons obtained any consideration in exchange for signing any deeds. Accordingly, the bankruptcy court did not err by finding that this transaction created an unfair advantage for Debtor. *See Burkle*, 139 Cal. App. 4th at 734 ("Whether an interspousal transaction gives one spouse an unfair advantage is a question for the trier of fact."). *See also In re Anderson*, No. 08-14401-B-7, 2011 WL 10653561, at *5 (Bankr. E.D. Cal. Jan. 21, 2011); *In re Wolf*, No. 05-62194-B-7, 2007 WL 2318952, at *5 (Bankr. E.D. Cal. Aug. 10, 2007); *In re Levy*, 2016 Cal. App. Unpub. LEXIS 8373, at *12 (2016) ("The fact that there was risk in purchasing and developing Porter Creek does not mean the presumption of undue influence is inapplicable.").

### 3.     Overcoming the Presumption of Undue Influence

The question of "whether the spouse gaining an advantage has overcome the presumption of undue influence is a question for the trier of fact, whose decision will not be reversed on appeal if supported by substantial evidence." *In re Mathews*, 133 Cal. App. 4th at 632. When a presumption of undue influence applies to a transaction, the spouse who was advantaged by the transaction must establish that the disadvantaged spouse's

action was "freely and voluntarily made, with full knowledge of all the facts, and with a complete understanding of the effect of the transaction." *Burkle*, 139 Cal. App. 4th at 739 (internal quotation marks omitted). "The question 'whether the spouse gaining an advantage has overcome the presumption of undue influence is a question for the trier of fact, whose decision will not be reversed on appeal if supported by substantial evidence.'" *Id.* at 737.

### a)     Freely and Voluntarily Signed

The bankruptcy court found it credible that Debtor and Pons had a "decade's long mutual agreement" that he would maintain their residences as his sole and separate property and that Pons would be "relieved of any financial liability or credit risk from the mortgage payments." AX 20. Debtor claimed that this agreement resulted from separate 1992 chapter 7 bankruptcy filings in Florida and Pons had decided that she did not want to be at risk of owning any debt that could result in bankruptcy. The existence of this agreement signaled to the bankruptcy court that Pons had signed the Interspousal Deed "freely and voluntarily."

Other evidence supported the fact that Pons had signed the Interspousal Transfer Deed freely and voluntarily. Pons signed a quitclaim deed transferring her interest in Caneridge to Debtor, and later signed a second quitclaim deed re-affirming that Caneridge was Debtor's sole and separate property. Later, Pons signed an Interspousal Deed transferring her interest in Deer Trail to Debtor, thus signing three deeds transferring her interest in real property to Debtor. At trial, Pons testified that she did not sign these deeds in front of a notary, a fact that the bankruptcy court disregarded. Further, Pons was informed about the "legal consequences of signing the deeds by the escrow company at closing and her signature was notarized." AX 21. Debtor further corroborated the intentional nature of Pons' transmutation by providing examples of a Florida and San Diego home which were acquired and held in title by both "Pedro Herrera and Agueda

Herrera, husband and wife as joint tenants." AX 22. According to Debtor, the second home was held in Pons' name because she wanted to receive the benefits of co-ownership, including a $89,725 net gain that was eventually obtained.

Here, Pons argued that she could not have voluntarily and freely signed because she was a victim of domestic violence. The Court agrees with the bankruptcy court that these allegations are not credible, particularly given that the family court's findings were by default and the likely result of Debtor's attorney's failure to file responses challenging these allegations.

Appellee argues that Appellant and his lawyer admitted several times that the Deer Trail residence was a community asset and that this court should summary affirm the order under the doctrine of judicial estoppel. The bankruptcy court afforded "little weight to Debtor's three references to Deer Trail as the community residence during the Divorce Case, which Debtor explained was the fault of his attorney. He referred to Deer Trail as the family residence at trial, and he lived there until the family court ordered him to vacate." The Court agrees that these mere misstatements do not require the invocation of judicial estoppel.[7] Mere misstatements by an attorney do not require the Court to invoke an equitable doctrine intended to prevent a litigant from "playing fast and loose with the courts." *See Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997). Such a view of the facts would not have invoked an inconsistent position and moreover these statements did not involve the determination of whether the property was community property.

Accordingly, the Court concludes that the bankruptcy court correctly determined

---

[7] *See* SAX 86 ("I do not agree to vacate the family residence . . . I am requesting that the court order the community residence to be listed for sale immediately."); AX 232 ("pay all household expenses for the community residence"); AX 233 ("the parties will now lose their acquired equity in the property."). "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.1996).

that the transmutation agreement for Deer Trail was entered into freely and voluntarily by
Pons.

### b) Full Knowledge of All the Facts and a Complete Understanding of the Legal Effect of the Transaction

Despite concluding that the transmutation was freely and voluntarily signed, the bankruptcy court ultimately found that there was not sufficient evidence to demonstrate that Pons entered into the agreement "with full knowledge of all the facts" or a "complete understanding of the effect of the transaction" to overcome the presumption of undue influence. AX 16. The Court agrees.

Here, there was no evidence presented at trial that Pons—who has limited work experience and education—consulted any lawyers or other independent parties to explain to her the consequences of signing the Interspousal deed. The lack of attorney or other third party advice distinguishes these facts from cases finding that the presumption of undue influence was adequately rebutted. *See, e.g.*, *Burkle*, 139 Cal. App. 4th at 738 (finding presumption of undue influence rebutted where relevant financial information was provided to attorneys and accountants and wife had been represented by a "number of attorneys, including family law specialists."); *In re Marriage of Balcof*, 141 Cal. App. 4th 1509, 1521, 47 Cal. Rptr. 3d 183, 191 (2006) (holding that presumption of undue influence was not rebutted where disadvantaged party testified that he "did not know the legal effect of the words he was writing and that he did not have an opportunity to discuss their legal effect with counsel."); *In re Marriage of Baltins*, 212 Cal. App. 3d 66, 85 (lack of independent advice is a factor to be weighed by the trial court in the determination of whether the consequences of a transaction was completely understood).

The Court observes that the bankruptcy court made a finding that Pons received an explanation of the legal consequences of signing the deeds by the escrow company at closing. AX 21 ("The court finds that with each of the loan transactions on both Caneridge

and Deer Trail, Pons was explained the legal consequences of signing the deeds by the escrow company at closing and her signature was notarized."). Yet, this does not constitute the type of independent advice by an attorney that is sufficient to rebut the presumption of undue influence. Other pertinent facts demonstrating understanding of the effect of the deeds such as the disadvantaged party having above average English skills, expertise in financial matters, and separate investment accounts are also absent from this case. *See In re Marriage of Mathews*, 133 Cal. App. 4th at 632. As such, the Court finds that substantial evidence supports the bankruptcy court's conclusion that Debtor did not adequately rebut the presumption of undue influence.

Accordingly, the Court affirms the conclusion of the bankruptcy court finding that Deer Trail is community property.

## F. Section 2640 Right of Reimbursement

Appellant argues that he is entitled to a California Family Code Section 2640 right of reimbursement and that the bankruptcy court failed to take into account his right under this statute. California Family Code Section 2640 provides a right to reimbursement of traceable separate property contributions to the acquisition of property of a community property estate. The bankruptcy court did not consider Section 2640 in making its determination that Deer Trail constituted community property. Accordingly, the Court will remand to the bankruptcy court to consider this issue in the first instance,[8] taking into consideration any relevant standard set forth in *In re Mantle*, 153 F.3d 1082 (9th Cir. 1998) (holding that a Section 2640 right of reimbursement does not render separate property contributions into separate property prior to division by the superior court).

---

[8] The Court observes that it is possible that the Bankruptcy Court has abstained from this determination (and the abstention issue was not appealed by Debtor). *See* AX 26 ("The court will abstain from deciding the remaining family law issues that do not affect the administration of the estate.").

## IV. Sanctions Order

On November 16, 2017, the bankruptcy court held a noticed hearing as to Debtor's Motion for Rule 9011(B)-(C) sanctions. The Court concluded that there was no bad faith shown by any of the responding parties and confirmed its tentative written decision denying the motion for sanctions. AX 30.

Pons argues inter alia that the sanctions appeal should be (1) dismissed for lack of jurisdiction; (2) be deemed waived; and (3) lacks substantive merit.

Pons contends first that appellant lacks jurisdiction over the second amended notice of appeal because it involves a separate order. The Court agrees. Bankruptcy appellants must "file a separate notice of appeal for each bankruptcy court's final order or judgment with which the appellant disagrees." *In re Rozerk Farms, Inc.*, 139 B.R. 463, 465 (E.D. Mo. 1992). Courts considering this issue have observed that "[w]hile Appellants may think it unfair and a waste of time to file a separate notice of appeal each time the bankruptcy court enters a final order with which it disagrees, fundamental fairness requires that opposing parties and the Court receive notice when a party desires to initiate an appeal." *Byrd v. Branigan*, 2006 WL 4458702 (Bankr. D. Md. Nov. 29, 2006). Consequently "[t]o hold otherwise would eliminate the finality of bankruptcy orders and frustrate the central policy of the bankruptcy laws to promote the expedient administration of the bankrupt estate." *See id.* (citing *Gait v. Jericho-Britton*, 812 F.2d 582, 584 (9th Cir. 1987). In *Byrd*, Appellants filed a notice of appeal challenging a Confirmation Order and then later amended their notice of appeal to challenge a later-issued Conversion Order. The Court concluded that it lacked jurisdiction over the Conversion Order because appellants had failed to file a separate notice of appeal.

Appellant filed a notice of appeal challenging the community property decision on November 27, 2017, then later amended the notice of appeal to challenge the Sanctions Order on December 15, 2017. Here, while recognizing Appellant's pro se status, the Court

similarly concludes that it lacks jurisdiction over the Sanctions Order because Appellant failed to file a notice of appeal separate from the notice appealing the community property determination. *See Byrd*, 2006 WL 4458702, at *6 ("Accordingly, as to the Conversion Order, because Appellants have failed to file a notice of appeal, separate from the notice appealing the Confirmation Order, the jurisdictional defect bars appellate review by this Court."); *In re Frontier Airlines, Inc.*, 108 B.R. 277, 279 (D. Colo. 1989) ("While the Bunn Group may think it unfair and a waste of time to file a separate notice of appeal each time the bankruptcy court enters a final order with which it disagrees, fundamental fairness requires that opposing parties and the court receive timely notice when a party desires to initiate an appeal. The group's pro se status does not suspend the requirement that it comply with the jurisdictional rules relating to notices of appeal.").[9]

Moreover, even if the Court were to consider the Sanctions Order on appeal, the Court observes that Appellant has waived his arguments challenging this order by not sufficiently briefing the issue. Appellant raises the sanctions order in only two summary-type paragraphs that do not contain specific and distinct argumentation regarding why the Sanctions Order was erroneously denied. *See* Dkt. No. 23 at 9, 34. Under Ninth Circuit law, this failure to raise these arguments specifically and distinctly in the opening brief constitutes waiver. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n.1 (9th Cir. 2000).

Accordingly, the Court concludes that it lacks jurisdiction to review the Sanctions Order.

---

[9] The Court need not consider Pons' argument that Appellant failed to timely include Respondent's counsel as a party to the Sanctions Order given the conclusion that the Court lacks jurisdiction over the Sanctions appeal.

## V.    Costs on Appeal

In her opening brief, Pons asks—in a single line in her conclusion—that she be awarded costs on appeal.  As she has not adequately briefed this issue, the Court will deny this request without prejudice.

### CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that the November 13, 2017 Memorandum Decision of the Bankruptcy Court determining that Deer Trail is community property is **AFFIRMED**.  The Court **REMANDS** to the bankruptcy court for further proceedings consistent with this opinion including the determination of whether Section 2640's right to reimbursement is relevant to this action.  The Court concludes that it lacks jurisdiction over the appeal of the bankruptcy court's December 5, 2017 Order denying sanctions.  Pons' request for costs is denied without prejudice.

**IT IS SO ORDERED.**

Dated:  May 16, 2018

Hon. Gonzalo P. Curiel
United States District Judge

22